******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KAHN, J., with whom ROBINSON, C. J., and MUL-LINS, J., join, concurring in part and dissenting in part. The majority concludes that the defendant, Mark T., is entitled to a new trial because the trial court improperly precluded him from testifying about his thirteen year old daughter's behavioral issues and the treatment program to which he was attempting to take her when he dragged her by her ankle through the corridors of her school, thereby causing her injury. According to the majority, it is impossible to "conclude, with a fair assurance, that the [exclusion of the defendant's testimony] did not substantially affect the verdict." Specifically, it concludes that the jury reasonably could have concluded that details of the victim's alleged behavior and the specific nature of the treatment that the defendant had arranged for her—which details he did not describe before the trial court or on appeal—might have caused him to have urgent concerns about the victim that, in turn, might have led him subjectively and reasonably to believe that his conduct was necessary to promote her welfare. I disagree.[1] I would conclude that the trial court correctly determined that the very slight probative value of the defendant's testimony on these issues was outweighed by the victim's privacy interests. Moreover, even if I were to agree that the exclusion of the testimony constituted an abuse of discretion, the defendant cannot establish that any impropriety was harmful because he did not make an offer of proof at trial as to the testimony that he would have given if the trial court had allowed it; nor has he explained on appeal what that testimony would have been. Accordingly, I respectfully dissent in part.

Although the majority opinion accurately sets forth the facts and procedural history of this case, I would emphasize the following facts that have particular relevance to the issues before us on appeal. The victim's teacher, Monika Wilkos, testified at trial that the victim was enrolled in an "intensive behavior support program. So any student that is placed in that program has a history of just—it's not always disruptive, but behavioral issues that's keeping them from making progress in school. So it's a program designed to support students and teach coping skills, as well as academics; there's a whole therapeutic component to it. So, any student that would come to my classroom would, in my experience, would have incidents where they were yelling or upset about something during the school day."

Wilkos also testified that, when she informed the victim that the defendant had come to the school to take her to the treatment program, the victim became very upset and repeatedly yelled, "I'm not going . . . ." When the defendant arrived and tried to persuade her

to go, the victim repeatedly screamed at him, "I'm not fucking going with you, you can't make me go . . . ." When the defendant attempted to take hold of the victim's arms from behind, she dropped to the floor and onto her back. At that point, the defendant grabbed her by her ankle and started dragging her.

Wilkos further testified that, while the defendant was dragging the victim through the corridors of the school by her ankle, she continued to struggle violently and to scream hysterically. Wilkos crouched over the victim and tried to find a way to help her get to her feet because she could see that the victim was being hurt. When the victim attempted to stop the defendant's progress by grabbing onto door frames, bookcases and chairs, the defendant forcefully pried and yanked her hands off of them. A sixth grade student who witnessed the incident was terrified and crying. Because of the disturbance, school personnel called a "code yellow," meaning that students were instructed that they were not allowed to leave their classrooms.

With this background in mind, I begin with a review of the legal principles governing the defendant's claim. General Statutes (Rev. to 2015) § 53a-18 provides in relevant part: "The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

"(1) A parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor . . . ."

The trial court properly instructed the jury that, under this statute, it must find that the defendant did not act with parental justification if it found "any of the following: (1) The state has proved beyond a reasonable doubt that when the defendant used physical force, he did not actually believe that physical force was necessary to maintain discipline or to promote the welfare of the minor; (2) the state has proved beyond a reasonable doubt that the defendant's actual belief concerning the use of physical force was unreasonable, in the sense that a reasonable person, viewing all the circumstances from the defendant's point of view, would have not shared that belief; or (3) the state has proved beyond a reasonable doubt that, when the defendant used physical force to maintain discipline or to promote the welfare of the minor, he did not actually believe that the degree of force he used was necessary for the purpose; here again, as with the first requirement, an actual belief is an honest, sincere belief; or (4) the state has proved beyond a reasonable doubt that, if the defendant did actually believe that the degree of force he used to maintain discipline or to promote the welfare of the

minor was necessary for that purpose, that belief was unreasonable, in the sense that a reasonable person, viewing all the circumstances from the defendant's point of view, would not have shared that belief."

"A defendant has a constitutional right to present a defense, but he is [nonetheless] bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . *State* v. *Andrews*, 313 Conn. 266, 275, 96 A.3d 1199 (2014). Accordingly, [i]f the proffered evidence is not relevant [or is otherwise inadmissible], the defendant's right to [present a defense] is not affected, and the evidence was properly excluded. . . . *State* v. *Devalda*, 306 Conn. 494, 516, 50 A.3d 882 (2012); see also *State* v. *Hedge*, 297 Conn. 621, 634–36, 1 A.3d 1051 (2010) (defendant has constitutional right to introduce evidence of third-party culpability if it is relevant and directly connects third party to crime); *State* v. *Tutson*, 278 Conn. 715, 746–51, 899 A.2d 598 (2006) (no violation of constitutional right to present defense when trial court properly excluded evidence on hearsay grounds)." (Internal quotation marks omitted.) *State* v. *Bennett*, 324 Conn. 744, 760–61, 155 A.3d 188 (2017). Thus, "the question of the admissibility of the proffered evidence is one of evidentiary, but not constitutional, dimension." *State* v. *Shabazz*, 246 Conn. 746, 753 n.4, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 180, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

I begin my analysis with a review of the trial court's actual rulings. Although the court sustained the prosecutor's objection to the defendant's testimony that, after he obtained custody of his daughter, she ran away every night, the court immediately clarified that the defendant could testify about the victim's difficult behaviors "[w]ithout getting into too much detail." With respect to the prosecutor's objection to the defendant's testimony that he had reached out to the Department of Children

and Families for help on many occasions, the defendant abandoned that topic without waiting for any ruling on the objection by the trial court. The court then overruled the prosecutor's objections to the defendant's testimony that he was desperate to get help for the victim because the police were coming to his house every day and that he was determined not to let the victim enter the foster care system, in which he had been raised. The court also allowed the defendant to testify that the people that he turned to for help refused to help him, so he was forced to get help himself. Although the trial court sustained the prosecutor's objection to the defendant's attempt to testify as to the specific details of the help that he sought, the court allowed the defendant to testify that the "[t]he help that [the victim] needed . . . was not just some after-school program; it was much more significant."

Thus, the trial court permitted the defendant to testify that he was having severe difficulties with the victim's behavioral problems, which required daily police intervention, that he was "desperate" to obtain help for the victim, that he was trying to take her to obtain that help at the time of the incident, and that the nature of that help was significant. The jury was also informed through Wilkos' testimony that the victim was enrolled in an intensive support program at the school designed for students with significant behavioral issues, and that it was common for those students to engage in disruptive behavior, to yell, and to become upset. Finally, the jury was informed of the victim's conduct when the defendant came to take her to the treatment program, specifically, that she vigorously defied and swore at the defendant, that she physically resisted his initial attempts to persuade her to go with him and that she screamed and struggled during the entire incident. I do not believe that the excluded testimony regarding the victim's attempts to run away and the specific details of the treatment that the defendant had arranged for the victim would have added materially to the probative value of this evidence.

In this regard, I emphasize that the parental justification defense applies only to the *justified* use of physical force that is objectively necessary[2] to promote the welfare of a minor; it does not provide an *excuse* for the unnecessary use of physical force by a parent who reasonably is suffering from extreme frustration or some other form of emotional distress. Although the defendant's past difficulties with the victim might tend to explain his emotional state during the encounter and to excuse his behavior, at least morally, it is, in my view, highly dubious that a jury could reasonably conclude that any sense of urgency short of a subjective and reasonable belief in the need for immediate treatment to save life or limb would justify dragging the recalcitrant victim by her ankle through the corridors of the school as she struggled and screamed, thereby causing physi-

cal injury to the victim and a serious and frightening disturbance in the school, as an objectively necessary means to promote her welfare. The record reveals that professionals, like Wilkos, were attempting to assist the victim and to prevent the violent removal of her from the school. Nothing in the record remotely supports a conclusion that the victim was in imminent danger of serious harm such that it would have been detrimental to her welfare to postpone treatment until such time as the victim could be either persuaded to go to treatment or, if necessary, constrained to go in a skillful and orderly manner. Indeed, if the defendant had information regarding the victim's behavior or the treatment program that was significantly different in quality or significantly more probative with respect to his justification defense than the information that was actually provided to the jury, it is difficult to understand why he would not have disclosed that information to the prosecutor or to the trial court at any point during pretrial proceedings or trial.[3] Thus, on the basis of the record before it, the trial court reasonably could have concluded that additional evidence of the victim's past behavior would have been very weakly probative, at best.

Accordingly, the trial court reasonably could have concluded that the victim's privacy interest in not having additional details of her behavioral problems and proposed treatment published in court, which was the basis for the state's pretrial motion in limine, outweighed the merely incremental value to the defendant of providing the jury with those details.[4] I would conclude, therefore, that the Appellate Court correctly determined that it was not an abuse of discretion for the trial court to exclude this evidence. Because I would conclude that the trial court properly excluded the testimony of Wilkos and the defendant, I would also conclude that the Appellate Court correctly concluded that the trial court did not violate the defendant's constitutional right to present a defense. See, e.g., *State* v. *Devalda*, supra, 306 Conn. 516 ("[i]f the proffered evidence is not relevant [or is otherwise inadmissible], the defendant's right to [present a defense] is not affected" by its exclusion (internal quotation marks omitted)).

The majority contends that, although the jury was informed that the victim was in a special program for students with serious behavioral problems, that the police were coming to the defendant's house every night to deal with the victim, that the defendant was acutely afraid that the victim would be placed in foster care if she continued to engage in such disturbing and disruptive behavior, that the defendant believed that getting treatment for the victim was urgent, that the treatment program he was trying to bring her to was significant, and that the victim was extremely upset, physically resistant and profanely defiant when informed that the defendant was going to take her to the treatment pro-

gram, the excluded testimony was, nevertheless, "material to the subjective and objective reasonableness" of the defendant's conduct in dragging the victim through the school by her ankle as she struggled and screamed.[5] Specifically, the majority contends that "[t]he nature and severity of the defendant's difficulty parenting his daughter were material to the strength of his subjective belief that his use of force was reasonable to get [the victim] to her mental health appointment." In addition, the majority contends that "the nature and severity of [the victim's] behavioral problems were material to the degree to which a reasonable parent in the defendant's position would agree that his use of force was reasonable under the circumstances." Accordingly, the majority states that it "cannot conclude, with a fair assurance, that the [exclusion of the defendant's testimony] did not substantially affect the verdict."

The fundamental flaw in this analysis is that, even if the majority were correct that the trial court improperly excluded the defendant's testimony because it was relevant to the defendant's justification defense, the defendant made no offer of proof before the trial court regarding the details of the victim's difficult behaviors and the nature of the treatment program to which he would have testified if allowed, and he also did not provide those details on appeal to the Appellate Court or to this court. Accordingly, the majority has no basis for concluding that the exclusion of the testimony was harmful.[6] See, e.g., *Dinan* v. *Marchand*, 279 Conn. 558, 583, 903 A.2d 201 (2006) ("[b]ecause at trial the plaintiff made no offer of proof regarding the specific substance of the excluded testimony . . . it is not possible to evaluate the harmfulness of the exclusion, if improper, in light of the record"); *Burns* v. *Hanson*, 249 Conn. 809, 824, 734 A.2d 964 (1999) ("[t]he absence of an offer of proof may create a gap in the record that would invite inappropriate speculation on appeal about the possible substance of the excluded testimony"). Although the defendant's failure to make an offer of proof is arguably excusable in light of the fact that he was self-represented, he is represented by counsel on appeal, and he still has not specified the additional facts to which he would have testified if the trial court had permitted such testimony or explained how those facts could have affected the verdict. Cf. *In re Lukas K.*, 300 Conn. 463, 465, 473–74, 14 A.3d 990 (2011) (trial court properly denied request for continuance in termination of parental rights proceeding when respondent father had "not identified on appeal any additional evidence or arguments that he could have presented if the trial court had granted his request"); *State* v. *Lopez*, 280 Conn. 779, 790, 911 A.2d 1099 (2007) (when defendant did not identify on appeal any arguments that defense counsel would have made at sentencing hearing if trial court had granted defendant's request for continuance so that new counsel could review trial transcript, any

impropriety in denying request for continuance was deemed harmless). In light of these well established principles of appellate review, there is no basis to conclude, on this record, that the defendant is entitled to a new trial.

Like the majority, I, too, recognize that this was a trial involving a self-represented defendant who, at the time of the incident, had recently obtained custody of his troubled young daughter. I believe, however, that the majority has given that consideration far too much weight. The defendant was warned repeatedly about the dangers of self-representation,[7] and my review of the record satisfies me that the trial court patiently explained and assisted the defendant with the trial process and gave him wide latitude on many occasions, consistent with the court's duty to be solicitous of the rights of self-represented parties.[8] See, e.g., *Marlow* v. *Starkweather*, 113 Conn. App. 469, 473, 966 A.2d 770 (2009) (The courts should be "solicitous of the rights of [self-represented] litigants and . . . endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party. . . . Although [the trial courts may] not entirely disregard our rules of practice, [they should] give great latitude to [self-represented] litigants in order that justice may both be done and be seen to be done." (Internal quotation marks omitted.)). Placing too much emphasis on a defendant's self-representation sends the message that a defendant can ignore repeated warnings about the real and serious dangers of self-representation, roll the dice on representing himself in a jury trial and, if he is convicted, get a second bite at the apple.[9]

Finally, there is no question that a reasonable person, including a member of a jury, would be sympathetic to the challenges presented in raising a child with significant behavioral issues. However, our job is to determine whether the trial court properly excluded the defendant's testimony. I would conclude that it did and that, even if it did not, the defendant cannot establish that any impropriety was harmful.

Because I disagree with the majority's conclusion that a new trial is warranted, I respectfully dissent in part.

[1] I agree with the majority's conclusion that the trial court properly precluded the defendant from questioning the victim's special education teacher, Monika Wilkos, as to whether the victim had "ever been physical with anybody else in the school . . . ."

[2] For purposes of this concurring and dissenting opinion, and consistent with the instructions provided to the jury, the term "objectively necessary means" refers to means that a reasonable person would believe are necessary to use under the circumstances.

[3] The only information that may be gleaned from a review of the trial court's hearings on the two motions in limine filed by the state and the eight separate pretrial motions filed by the defendant is that the defendant planned to take the victim to an intake appointment at a known mental health treatment facility for children.

[4] At the hearing on the state's motion in limine, the guardian ad litem argued that the victim had a privacy interest in not revealing the name of

the treatment facility at which she had an appointment on the day of the incident because it would tend to reveal the nature of the disorder for which the defendant sought treatment on the victim's behalf. It is well established that persons have a privacy interest in their medical treatment records that may justify the exclusion of relevant medical evidence. See *State* v. *White*, 139 Conn. App. 430, 440, 55 A.3d 818 (2012) (it was within trial court's discretion "to exclude the [complainant's] medical records, as they would not have disclosed material sufficiently probative of the defendant's theory of defense to justify breaching their confidentiality"), cert. denied, 307 Conn. 953, 58 A.3d 975 (2013). It follows that the trial court also has the discretion to exclude testimony that would reveal the content of confidential medical records, such as the nature of the disorder for which the person is being treated and the identity of the medical treatment provider.

The majority states that, because the articulated basis for the prosecutor's objections to the defendant's question was relevancy, the state cannot now claim that the testimony was properly excluded on the ground that the exclusion of the testimony would protect the victim's privacy. I would note that the prosecutor did not articulate the basis for several of her objections to the defendant's questions, including the questions specifically directed at the nature of the treatment that the defendant had arranged for the victim. In light of the subject matter of the defendant's testimony, the trial court reasonably could have concluded that the objections were based on its ruling on the pretrial motion in limine. The majority also states that the defendant's testimony about the specific nature of the treatment program was "too general" to render further testimony cumulative. The defendant does not challenge on appeal, however, the trial court's pretrial ruling precluding him from identifying the treatment facility *for the very reason* that it would tend to reveal the nature of the victim's disorder.

[5] As the trial court properly instructed the jury, the subjective component of the parental justification defense requires that the defendant must *actually* believe that his conduct was *necessary* to promote the victim's welfare. The reasonableness requirement comes in through the objective component, under which the jury must be instructed that, if it finds that the defendant actually believed that his use of physical force was necessary, it still must find the defendant guilty if it determines that a reasonable person, viewing all the circumstances from the defendant's point of view, would not have shared that belief. Cf. *State* v. *Heinemann*, 282 Conn. 281, 301–302, 920 A.2d 278 (2007) (discussing difference between subjective component of duress defense, under which defendant in fact must believe that his life would be endangered, and objective component, under which defendant's belief must be reasonable). In apparent reliance on the Appellate Court's statement that "the defense of parental justification requires both subjective and objective reasonableness on behalf of the parent or guardian with respect to the use of physical force"; *State* v. *Mark T.*, 186 Conn. App. 285, 296–97, 199 A.3d 35 (2018); the majority on several occasions uses language that, contrary to the statutory language and the trial court's instruction, seems to inject a reasonableness requirement into the subjective component of the defense. Specifically, the majority refers to the "objective and subjective elements of reasonableness"; "subjective and objective reasonableness"; the jury's ability to determine whether "the defendant's conduct could be subjectively or objectively reasonable"; "the reasonableness of [the defendant's] actions, both subjectively and objectively"; and "the subjective and objective reasonableness of the defendant's actions." Although the majority states that "nothing about [its] analysis injects a reasonableness requirement into the subjective component of the defense"; footnote 7 of the majority opinion; the language it employs clearly suggests that, to the contrary, the subjective component may be satisfied if the jury finds that the defendant believed that the use of physical force was *reasonable*, rather than that it was *necessary*. The reference to the "subjective and objective reasonableness" language not only needlessly muddies the true focus of the subjective component of the defense of justification, it also erroneously suggests that the defendant, and not the jury, should be left to judge the objective reasonableness of his own beliefs and actions.

[6] The majority faults the state for conflating relevance with cumulativeness with respect to its argument that the trial court properly excluded the defendant's testimony. Even if there were some merit to that contention, the majority overlooks the defendant's failure to establish that any additional evidence would not have been merely cumulative when considering whether the trial court's ruling was harmful.

[7] As the Appellate Court observed, "[o]n more than one occasion, the

[trial] court canvassed the defendant in accord[ance] with Practice Book § 44-3 (4), ensuring that he was aware of the dangers and disadvantages of self-representation." *State* v. *Mark T.*, 186 Conn. App. 285, 288 n.1, 199 A.3d 35 (2018). The record also reveals that the trial judge appointed standby counsel for the defendant on July 28, 2016, approximately six weeks prior to the start of trial. In addition to attending pretrial hearings and jury selection, standby counsel was present during the entire duration of the trial and was available to the defendant, should he have opted to seek his assistance or advice.

[8] For example, in response to numerous valid objections by the prosecutor that the defendant was making arguments instead of asking witnesses questions, the court suggested that the defendant rephrase his statements by asking specific questions and explained that he would have a chance to make arguments and to tell the jury the significance of the particular exhibits to which he was referring during his closing argument. The court took no action when the defendant told the jury during a witnesses' testimony that he was "fighting for [his] life." When the defendant asked the victim during cross-examination how she had managed to flip over while he was holding her right leg and left arm, she stated, "I don't know, I just did." The trial court took no action when the defendant responded to this testimony with sarcastic disbelief, stating, "[y]ou just did. That is . . . amazing . . . that's amazing." Nor did the court take any action when, also during his questioning of the victim, the defendant stated sarcastically, "[s]o, now we're in the middle of such a horrendous event . . . ." Later, the court gave the defendant an opportunity to reconsider his decision to testify and carefully warned him of the dangers of doing so. The court also gave the defendant a detailed explanation of the jury instructions when it became apparent that he had misunderstood them. In addition, the court took no action when the defendant argued to the jury that he was trying to take the victim to the hospital for services during the incident, despite the fact that the court previously had prevented the defendant from testifying to that effect.

[9] Having said this, I acknowledge that additional steps could have been taken to allow the self-represented defendant to present a more detailed picture of the context of the incident to the jury. For example, although the issue was squarely raised before trial, the court and the parties apparently reached no pretrial understanding as to the precise level of detail regarding the treatment facility and the nature of the appointment to which the defendant was attempting to take the victim that he would be allowed to present. Nor was there an understanding as to the level of detail regarding the victim's difficult behaviors that would be permitted. It would have been helpful if the court had explained, outside of the presence of the jury, the parameters of the evidence that would be permitted relating to this issue. In addition, although the prosecutor did not engage in any improper conduct, she repeatedly objected during the defendant's examination of witnesses, sometimes without stating on the record the basis for objecting to the admission of the evidence. Accordingly, it would have been helpful for the trial court to explain the reasons for its evidentiary rulings on the record. Nevertheless, although the trial may not have been a perfect one, it was a fair one. Cf. *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001) ("[d]ue process seeks to assure a defendant a fair trial, not a perfect one" (internal quotation marks omitted)).